# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Amy J. St. Eve | Sitting Judge if Other than Assigned Judge | 7/7/04 |
|---|---|---|---|
| CASE NUMBER | 04 C 3453 | DATE | |
| CASE TITLE | Wellek vs. USA | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due _____.

(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.

(4) ☐ Ruling/Hearing on _____ set for _____ at _____.

(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7) ☐ Trial[set for/re-set for] on _____ at _____.

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to] ☐ FRCP4(m) ☐ Local Rule 41.1 ☐ FRCP41(a)(1) ☐ FRCP41(a)(2).

(10) ■ [Other docket entry] Enter Memorandum Opinion and Order. The Court finds that the IRS's jeopardy assessment and jeopardy levy are reasonable under the circumstances pursuant to 26 U.S.C. § 7429(b), and the amount assessed and demanded is appropriate under the circumstances pursuant to 26 U.S.C. § 7429(b)(3).

(11) ■ [For further detail see order attached to the original minute order.]

| | No notices required, advised in open court. | | | |
|---|---|---|---|---|
| | No notices required. | | number of notices | Document Number |
| | Notices mailed by judge's staff. | | JUL 0 8 2004 | |
| | Notified counsel by telephone. | | date docketed | |
| ✓ | Docketing to mail notices. | | | 24 |
| | Mail AO 450 form. | | | |
| | Copy to judge/magistrate judge. | U.S. DISTRICT COURT CLERK | docketing deputy initials | |
| TH | courtroom deputy's initials | 2004 JUL -7 PM 5:27 | date mailed notice | |
| | | Date/time received in central Clerk's Office | mailing deputy initials | |

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

MICHAEL G. WELLEK,                )
                                  )
            Plaintiff,            )
                                  )
     v.                           )   No. 04 C 3453
                                  )
UNITED STATES OF AMERICA,         )
                                  )
            Defendant.            )

DOCKETED
JUL 0 8 2004

## MEMORANDUM OPINION AND ORDER

AMY J. ST. EVE, District Court Judge:

In April 2004, the Internal Revenue Service ("IRS") issued a jeopardy assessment and jeopardy levy upon approximately $12,000,000 of Plaintiff's seized cash to satisfy past due tax obligations totaling $11,537,250.16. Plaintiff filed a complaint pursuant to 26 U.S.C. § 7429(b) seeking a judicial determination of the reasonableness of the jeopardy assessment, jeopardy levy, and the amount assessed.

## BACKGROUND

Mr. Wellek operates three exotic dancing establishments in Illinois – Heavenly Bodies, The Skybox and Cowboys. These establishments generate primarily cash income. Mr. Wellek failed to file any personal or corporate income tax returns for the tax years 1989 through 1999. As a result, the IRS conducted an examination to determine Mr. Wellek's tax liability for those years.

I.   **IRS Investigation of Michael Wellek**

Initially, Mr. Wellek did not cooperate with the IRS. When Mr. Wellek eventually began cooperating with the IRS, he informed the revenue agents that he was accruing funds to prepare

24

for a potential liability to the Department of Labor ("DOL"). Wellek said that he had deducted this potential DOL liability from his income. Although the deduction was not allowable under tax law, Mr. Wellek claimed that the amounts he had accrued offset any income he had earned between 1989 and 1999. Despite Mr. Wellek's misunderstanding of the tax law and of his obligation to file annual tax returns, the IRS continued working with him in order to determine his past revenues and tax liabilities. During this process, Mr. Wellek prepared spreadsheets for the revenue agents. He represented to the agents that these spreadsheets reflected all of his deposits into his bank account. Wellek further represented that these deposits accurately reflected his total income for the tax years in question. Revenue Agent Gibbons informed Mr. Wellek that they could utilize this "bank deposit method" of calculating his gross income for purposes of the audit, but he never informed Mr. Wellek that he only needed to report as income those amounts that he deposited during a tax year period.

In an effort to reconcile eleven years worth of unpaid tax liabilities, the IRS agreed to Mr. Wellek's suggestion to roll his tax liabilities for the tax years 1989 through 1999 into a single year. Mr. Wellek would then pay the cumulative taxes owed as if they were due for the year 1999. Based on the records provided by Mr. Wellek, the IRS determined that Mr. Wellek owed $3,282,188.58 for the eleven-year span during which he paid no taxes. The IRS also agreed to waive any penalties in making the assessment for the 1989 through 1999 tax liabilities. As IRS Revenue Agent Gibbons testified, the IRS was "very generous in this case."

Mr. Wellek made an initial $100,000 payment towards his liability in October of 2000. Under the agreement, Mr. Wellek was obligated to make monthly $100,000 payments toward his $3,282,188.58 liability until he paid it off. He also had to file his income tax returns on time. After his initial payment, however, Mr. Wellek failed to make any additional payments until

2

August 2002 after IRS Revenue Officer Perlman contacted him. Additionally, Mr. Wellek failed to timely file his tax returns for the tax years 2000 and 2001.

When Revenue Officer Perlman contacted Mr. Wellek in August 2002 to collect the remaining 1999 tax liability (representing taxes due for 1989-1999), Mr. Wellek informed him that he had not made any subsequent $100,000 payments pursuant to the agreement because he "couldn't afford to make any more." Mr. Wellek also told Revenue Officer Perlman "that he had structured his entire life and business arrangements so that if he were ever on the stand and had to answer the question, 'Do you own something?' under oath, he could say 'No' and not be lying." Revenue Officer Perlman subsequently investigated Mr. Wellek and found that Mr. Wellek owned virtually no assets in his name. Mr. Wellek's wife, however, owned substantial assets. A Choicepoint report for Mr. Wellek revealed that he had used "Michael Weller" and "Michael Stauter[1]" as aliases.

Mr. Wellek told Revenue Officer Perlman that he was unable to pay his entire tax bill at once. He said that he "didn't have the money, [and] that he couldn't come up with the money" to pay his outstanding liability. Revenue Officer Perlman reached an agreement with Mr. Wellek whereby Mr. Wellek would pay $20,000 per month on the outstanding liability. If Mr. Wellek complied with the payment schedule, the IRS agreed to abate $750,000 in penalties. Revenue Officer Perlman also requested that Mr. Wellek file his 2000 tax returns. Mr. Wellek failed to meet both the filing and the payment deadlines.

On April 18, 2003 – more than two years after it was due – Mr. Wellek finally filed his tax return for the tax year 2000. On Schedule C, Mr. Wellek reported gross income from his

---

[1] Stauter is Mr. Wellek's wife's last name.

3

business of $5,069,156 and claimed adjusted gross income of only $114,613. Mr. Wellek attached a "Disclosure Statement" representing that "gross receipts were based on the bank deposit method." Mr. Wellek did not disclose that he was not reporting all of his gross income as required by law.

## II. The IRS-CID Seizes Approximately $12,000,000 in Cash from Wellek

On or about May 5, 2003, the IRS Criminal Investigation Division ("IRS-CID"), pursuant to a search warrant authorized by the United States District Court for the Northern District of Illinois, executed the search warrant at a warehouse were Mr. Wellek conducted business. During the search, the IRS-CID seized approximately $12,000,000 in cash. The cash was stored in bags marked with a date and location indicating from which exotic dancing club the cash was earned. The IRS-CID also seized business records, including records revealing that Mr. Wellek had received some of the seized cash in 1999 and 2000.

A subsequent analysis of the seized cash and business records revealed that $2,696,476.05 was attributable to Mr. Wellek's 2000 tax year. A further analysis demonstrated that $871,193.20 of the cash receipts attributable to Mr. Wellek's 2000 tax year were deposited in years subsequent to 2000. The IRS treated this additional amount of $3,567,669.25 as net income to Mr. Wellek for the tax year 2000.

## III. Mr. Wellek Files His Tax Returns for Tax Years 2001 and 2002

After the IRS-CID executed the search warrant and seized the cash, Mr. Wellek filed his 2001 tax returns late. That return reflected a tax due of $1,727,664. He did not make any payments toward that amount, and the amount is still due and owing.

Mr. Wellek filed his tax return for the tax year 2002 on time, with extensions, reflecting a tax due of $2,035,386. That liability also remains due and owing.

## IV. Wellek's Attempts to Have the Money Returned

On July 21, 2003, Wellek filed a motion in the United States District Court for the Northern District of Illinois, pursuant to Federal Rule of Criminal Procedure 41(g), seeking return of the funds and business records that the IRS-CID had seized. On October 3, 2003, the magistrate judge denied the motion. On October 14, 2003, Mr. Wellek filed a Notice of Appeal seeking review of the denial from the district court. On March 18, 2004, the court affirmed the denial. On April 1, 2004, Mr. Wellek filed a motion for reconsideration of the court's order affirming the denial of the motion for return of property. Shortly before the hearing in this case, the court denied Mr. Wellek's motion for reconsideration.

On September 30, 2003, Mr. Wellek, through his counsel, sent a letter to the United States Attorney's Office in Chicago, requesting that the government apply the seized money to payment of his tax liabilities as follows: $2,640,000 for the tax years 1989 through 1999; $1,500,000 for the tax year 2000; and $2,000,000 each for the tax years of 2001 and 2002. Mr. Wellek also requested that the government return the remaining amount to him. On October 15, 2003, Wellek's attorney send a letter to IRS-CID Special Agent Matson, requesting payment of Mr. Wellek's 2002 tax liability from the seized funds. He also referenced Mr. Wellek's earlier request to apply the funds to his outstanding tax liabilities for other tax years. On January 7, 2004, Mr. Wellek's attorney again sent a letter to Special Agent Matson requesting application of the seized funds to Mr. Wellek's outstanding tax liabilities. Similarly, on January 15, 2004, Mr. Wellek's attorney directed Special Agent Matson to apply $559,743.15 of the seized funds to Mr. Wellek's 2003 tax liability. The government did not apply the seized funds to payment of the outstanding tax liabilities. Instead, the government maintains control over them pursuant to the search warrant as evidence of a crime, fruits of that crime, and/or property illegally possessed

5

or property intended for use in committing a crime. Fed. R. Crim. P. 41(c).

## V. The Jeopardy Assessment and Jeopardy Levy

On April 22, 2004, after Mr. Wellek filed his motion for reconsideration of the court's denial of his motion for return of the seized cash, the IRS issued a Notice of Jeopardy Assessment and Right of Appeal to Mr. Wellek. On April 23, 2004, the IRS issued a levy against the seized money in the amount of $11,537,250.16 to cover Mr. Wellek's total tax liabilities and associated penalties. The jeopardy assessment included an income tax liability relating to the additional $3,567,669.25 in income that the IRS claimed Mr. Wellek failed to report on his 2000 tax return. It also included a fraud penalty. After exhausting his administrative options, Mr. Wellek filed a petition in this Court contesting the jeopardy assessment, jeopardy levy, and assessment amount.

## VI. Summary Hearing

On June 21 and 22, 2004, this Court conducted a summary hearing regarding Plaintiff's challenge of the reasonableness of the jeopardy assessment and jeopardy levy. At the commencement of the hearing, Mr. Wellek informed the Court under oath that, if called to testify, he intended to assert his Fifth Amendment privilege and refuse to answer any relevant questions asked of him.

## ANALYSIS

The IRS uses jeopardy assessments to immediately assess taxes owed by a taxpayer and to demand payment from the taxpayer when the Service believes that delay would jeopardize future collection of taxes. 26 U.S.C. § 6861(a). A jeopardy levy is a distinct device, allowing the IRS to immediately seize and sell the taxpayer's property to satisfy a tax obligation when the Service believes that its ability to collect the tax is in jeopardy. *See* 26 U.S.C. § 6331(a)-(b).

To guard against the potentially harsh results of jeopardy actions, 26 U.S.C. § 7429 provides the taxpayer access to expedited administrative and judicial review to determine the reasonableness of the IRS's jeopardy actions. *Breen v. United States*, No. 81 C 517A, 1981 WL 1936 at *3, (N.D. Ga. Dec. 18, 1981). The taxpayer is first entitled to an administrative review of the reasonableness of the jeopardy actions. 26 U.S.C. § 7429(a). After exhausting his or her administrative remedies, the taxpayer may challenge the reasonableness of the jeopardy assessment and levy in a district court. 26 U.S.C. § 7429(b)(1)(B).

Section 7429(b)(3) provides that, "the court shall determine . . . whether or not . . . the making of the assessment under section 6851, 6861, or 6862, as the case may be, is reasonable under the circumstances, and . . . the amount so assessed or demanded as a result of the action taken under section 6851, 6861, or 6862 is appropriate under the circumstances, or . . . whether or not the levy described in subsection (a)(1) is reasonable under the circumstances." 26 U.S.C. § 7429(b)(3). Thus, the scope of the district court's review is limited to determining (1) whether making the assessment and levy is reasonable under the circumstances, and (2) whether the amount assessed is appropriate under the circumstances. *See Magluta v. United States*, 952 F. Supp. 798, 801 (S.D. Fla. 1996). The review is "'like a preliminary examination for probable cause in a criminal proceeding,' but the standard of review differs." *Nolan v. United States*, 539 F. Supp. 788, 790 (D.C. Ariz. 1982).

Judicial review under Section 7429 is a summary proceeding. *Harvey v. United States*, 730 F.Supp. 1097, 1104 (S.D. Fla. 1990). *See also Breen*, 1981 WL 1936 at *3 ("[C]ongress enacted Section 7429 to provide some form of summary judicial review, on an expedited

basis."). The court's determination is final and cannot be reviewed on appeal by any court.[2] 26 U.S.C. § 7429(f). The district court proceeding under Section 7429 "is unrelated, substantively and procedurally, to any subsequent proceeding to determine the correct tax liability. . . ." *Lindsey v. United States*, No. 1:91-CV-459-MHS, 1992 WL 179067 at *4 (N.D. Ga. May 26, 1992). Accordingly, the district court should not review the assessment and levy as a trial on the ultimate merits of the tax liabilities. *Lindsey*, 1992 WL 179067 at *4.

The Court makes *de novo*, independent determinations, without deferring to the IRS's determination of the reasonableness of the jeopardy assessment, jeopardy levy, or assessment amount. *Loretto v. United States*, 440 F. Supp. 1168, 1172 (D.C. Pa. 1977). Since the judicial review is a summary proceeding, the Court can hear evidence that may be inadmissible in a trial on the merits. *Magluta*, 952 F. Supp. at 801. The Court can also consider any facts known at the time of the assessment as well as information gathered afterwards in determining whether the assessment was reasonable. *Loretto*, 440 F. Supp. at 1173.

I. **Reasonableness of the Assessment and Levy**

Under Section 7429(g)(1), the government bears the burden of demonstrating that the jeopardy assessment is reasonable under the circumstances. 26 U.S.C. § 7429(b)(3)(A)(i), (g)(1). The IRS, not the taxpayer, bears the burden of proof on the reasonableness of the assessments. *See Hiley v. United States*, 807 F.2d 623, 629 (7th Cir. 1986). "Reasonable under the circumstances" means something more than "not arbitrary or capricious" and something less

---

[2] The Seventh Circuit has noted that appellate courts have jurisdiction over cases brought under Section 7429 "to determine whether the district court acted within the scope of its statutory authority in dismissing a § 7429 action on procedural grounds." *Hiley v. United States*, 807 F.2d 623, 627 (7th Cir. 1986). Appellate courts, however, cannot review a district court's decision on the merits. *Id.*

8

than "supported by substantial evidence." *Loretto*, 440 F. Supp. at 1172; *see also Penner v. United States*, 582 F.Supp. 432, 434 (S.D. Fla. 1984). The government only needs to prove that the circumstances *appear* to jeopardize collection. *Cantillo v. Coleman*, 559 F. Supp. 205, 207 (D.C. N.J. 1983); *see Guillame v. United States*, 290 F. Supp. 2d 1349, 1354 (S.D. Fla. 2003) (emphasizing that the ultimate question is not whether the taxing authority was correct, but rather whether the assessment was reasonable under the circumstances); *see Serpa v. United States*, No. CV81-L-17, 1981 WL 1759 at *3 (D.C. Neb. Mar. 12, 1981) ("[I]t is not essential that every fact upon which the determination is based be proven accurate in a subsequent judicial proceeding in order for that determination to be reasonable under § 7429 . . . The standard is one of reasonableness, not one of substantial evidence.").

The general test for reviewing the reasonableness of an assessment involves an inquiry into whether: (1) the taxpayer is or appears to be designing to leave the United States or to conceal him or herself, (2) the taxpayer is or appears to be designing to hide, transfer, conceal, or dissipate his or her assets, or (3) the taxpayer's financial solvency appears to be imperiled. *Nolan*, 539 F. Supp. at 790. If any of the above conditions are met, the jeopardy assessment is reasonable. *Id.*

In addition to the general factors for determining the reasonableness of a jeopardy assessment, courts may and should consider any other appropriate factors. *Lindsey*, 1992 WL 179067 at * 3. Courts have found that erratic fiscal behavior can satisfy the general test for reasonableness when the fiscal behavior is the kind that suggests tax dollars are in jeopardy. *Guillame*, 290 F. Supp at 1354; *see Friedman v. United States*, No. 1:02-CV-2461-BBM, 2002 WL 31495842 at 7 (N.D. Ga. Sep. 24, 2002) (finding a taxpayer's failure to file tax returns for seventeen years and unwillingness to make more than nominal payments towards outstanding

9

tax liability was reasonable grounds for the IRS to use jeopardy procedures). Among the other factors courts will consider are: (1) Possession of, or dealing in, large amounts of cash, (2) prior tax returns reporting little or no income despite the taxpayer possessing large amounts of cash, (3) dissipation of assets through forfeiture, expenditures for attorneys' fees, appearance bonds, and other expenses, (4) a lack of assets from which potential tax liability can be collected, (5) the use of aliases making it difficult to locate either the taxpayer or any of his assets, and (6) failure to supply appropriate financial information when requested. *Mesher v. United States*, 736 F. Supp. 233, 235-36 (D.C. Or. 1990).

The government also bears the burden of demonstrating the reasonableness of the jeopardy levy. 26 U.S.C. § 7429(g)(1). The standards for determining the reasonableness of a jeopardy levy are the same as those for a jeopardy assessment. 26 U.S.C. § 7429(b)(3)(B); *Friedman*, 2002 WL 31495842 at *6, n.8, *Lindsey*, 1992 WL 179067 at *3; *see Henderson v. United States*, 949 F. Supp. 473, 475 (N.D. Tex. 1996).

In determining that Mr. Wellek's tax liabilities were in jeopardy, the IRS considered Mr. Wellek's history in dealing with the IRS and his false statements about his inability to pay his tax liabilities. Despite Mr. Wellek's agreement with the IRS that he would make monthly $100,000 payments on his tax liability for the years 1989 through 1999, Mr. Wellek defaulted after only one payment. It took Mr. Wellek approximately two years and contact from Revenue Officer Perlman before he made any additional payments. Mr. Wellek represented to Revenue Officer Perlman that he could not pay his back taxes because he did not have the assets to do so. Despite this representation, Wellek had millions of dollars in cash stashed in his office warehouse. The cash was stored in bags and some of it, according to the labels on the bags, was even received as income in 1999. Mr. Wellek had failed to report this cash as income.

10

Furthermore, Mr. Wellek filed his 2000 tax return late, and under-reported his gross income by millions of dollars. He filed his 2001 and 2002 returns only after the IRS-CID executed the search warrant and seized millions in cash.

In addition to Mr. Wellek's misrepresentations to the IRS about his ability to pay his outstanding tax liabilities, his failure to file timely returns, his failure to report millions of dollars in cash on his tax returns, and his possession of a significant amount of cash, the IRS also considered Mr. Wellek's use of aliases, his multiple addresses, his failure to pay estimated taxes, and his maintenance of assets in a liquid form so he could conceal them. Additionally, in light of all these factors, when Mr. Wellek sought the return of the cash, the IRS was concerned about Mr. Wellek again concealing the funds. As IRS Area Associate Counsel Robert Little testified, "there was a motion pending to obtain a release of the funds, which we believed was a strong possibility. Given Mr. Wellek's previous tendencies to conceal assets, we were concerned about him getting his hands on that cash and the cash disappearing." If the district court ordered the return of the property, the IRS wanted the assessment and levy in place so Mr. Wellek could not place it in jeopardy given his history of concealing assets and defying the IRS. Given these factors, the Court finds that it was reasonable for the government to believe that the collection of the tax liabilities at issue was in jeopardy.

Mr. Wellek argues that the jeopardy assessment was unreasonable given that the IRS had seized approximately $12,000,000 in cash and had not returned it to Mr. Wellek. He contends that because he did not have control over the cash, he could not remove it from the United States, conceal it, or dissipate it. Mr. Wellek further adds that he made repeated attempts to have the IRS-CID apply the seized funds to his outstanding tax liabilities, but the IRS refused to do so. The IRS responds that it was not free to apply the funds seized by the IRS-CID because they

11

were under the control of the United States District Court. The IRS asserts that the seized cash is subject to further order or proceedings in the district court, and that it could not simply take the money and apply it at Wellek's request. The Court agrees with the IRS's position under these circumstances.

Moreover, with a search warrant, law enforcement can seize, among other items, evidence of a crime, fruits of a crime, and property illegally possessed or intended for use in commission of a crime. Fed. R. Crim. P. 41(c). Even if the IRS could have applied the seized funds to Mr. Wellek's taxes without prior court approval, it is not unreasonable for the IRS to refuse to transfer such evidence or illegally possessed property at the direction of, or for the benefit of, the person from whom the IRS has seized such evidence. Tellingly, the district court did not order, as Wellek had requested, that the United States apply any portion of the seized funds to Wellek's outstanding tax liability.

The Court finds that the jeopardy assessment and levy were reasonable under the circumstances of this case. The IRS has met its burden. Although the Court could draw a negative inference from Mr. Wellek's assertion of his Fifth Amendment privilege in this civil proceeding, the Court need not do so to conclude that the jeopardy assessment was reasonable. *See In re High Fructose Corn Syrup Antitrust Litig.*, 295 F.3d 651, 663 (7th Cir. 2002) ("The general rule is that an adverse inference may be drawn from such a refusal in a civil case"),

II.     **Appropriateness of the Amount**

There is a presumption that the amount assessed is reasonable and appropriate under the circumstances. *Magluta*, 952 F. Supp. at 803. The issue for the Court to determine is whether the amount assessed, based upon the information then available to the IRS, was appropriate under the circumstances. *Id.* It is not the district court's duty to determine the correct amount of

tax liability. *Cantillo v. Coleman*, 559 F.Supp. 205, 207 (D.C. N.J. 1983). Accordingly, the court examines the method of computation to determine if the amount assessed was appropriate. *Magluta*, 952 F. Supp. at 803. The burden is on the taxpayer to show that the method of calculating the assessment amount is fatally defective, irrational, arbitrary, or unsupported. *Id.*, citing *Granse v. United States*, 892 F. Supp. 219, 224 (D. Minn. 1995); *see Camp v. CIR*, 635 F. Supp. 585, 588 (E.D. La. 1986) (finding an assessed amount appropriate where "there is at least a sense of credibility and correctness regarding the proposed computation of the deficiency assessment. . . ."). Here, Plaintiff has failed to establish that the amount assessed by the IRS was inappropriate under the circumstances.

Mr. Wellek challenges the assessment of the fraud penalty for the 1999 tax period. As Revenue Agent Gibbons credibly testified, the IRS did not agree to forego assessing any penalties after the assessment to which Mr. Wellek consented for his 1999 liability. Revenue Officer Perlman agreed to abate the failure to pay penalties if Mr. Wellek complied with a payment program for his outstanding tax liability. Mr. Wellek, however, failed to comply with this program. Accordingly, Mr. Wellek has not met his burden of challenging the fraud penalty for this tax period.

Additionally, Mr. Wellek argues that the accrual of interest and failure-to-pay penalties should have ceased on the day the IRS seized his stashed cash from the warehouse. He argues that the IRS prevented him from paying his tax liabilities when it took this money, thus it is "fundamentally unfair" for interest and failure to pay penalties to accrue. The continued accrual of these penalties is not fatally defective, irrational, arbitrary, or unsupported under the circumstances of this case.

## CONCLUSION

The jeopardy assessment and levy against Mr. Wellek were reasonable under the circumstances and the amount assessed by the IRS was appropriate under the circumstances.

Dated: July 7, 2004

ENTERED:

_____
AMY J. ST. EVE
United States District Court Judge